## KOHEN *v.* MUTUAL RESERVE FUND LIFE ASS'N.[1]

*(Circuit Court, E. D. Missouri.* September 24, 1886.)

1. LIFE INSURANCE—CONDITION IN APPLICATION AS TO WHEN POLICY SHALL BE IN FORCE.

Where the application for insurance provides that the policy shall not be in force until it is delivered to the applicant, the contract of insurance will not become binding upon the company until delivered.

2. SAME.

Where such a condition is contained in an application by a husband for insurance on his life for his wife's benefit, the fact that the condition is printed, and the name of the wife as beneficiary is written, will not prevent such condition from being binding upon her.

3. SAME—DELAY.

*Semble,* that unnecessary delay upon the part of the company in passing upon the application, and delivering the policy, would not operate to bind it as insurer in case of the applicant's death before such delivery; and that, where the application was received at 4 P. M. one day, and acted upon the next day, the delay was not improper.

In Equity.

*George W. Taussig,* for plaintiff.

*Wm. C. & James C. Jones,* for defendant.

BREWER, J., (*orally.*)   This is a bill filed by the complainant, asking a decree compelling the execution of a life insurance policy, and, the alleged insured having died, the payment of the amount of the policy to the complainant.

The facts are that on November 7, 1885, Samuel Kohen made to the general agent of the defendant in this city his application for membership in the defendant company, and a policy of life insurance.   The application was filled out; the examination had before the company's physician here; the initiation fee, the annual dues, and the fees of the physician paid to such general agent, and a receipt taken therefor.   The papers, thus prepared, were forwarded to the general office at New York, and received there on the ninth of November at 4 o'clock in the afternoon.   The statements in the application showed that the applicant was a first-class risk, and the statements are admitted to be true.   On the tenth of November the application was passed to the medical director, by him approved, and from him, in the regular course of business, it went to the executive committee of the defendant company, and one of its three members wrote upon it "Approved," signing his name.   Apparently the application never passed away from the hands of the executive committee; and on the same day, the tenth or perhaps the eleventh of November, owing to information received by telegram from St. Louis, this approval was erased, and "Declined" written and signed by the

[1] Edited by Benj. F. Rex, Esq., of the St. Louis bar.

chairman of the executive committee. No certificate of membership was ever prepared, and no policy was ever issued. On the tenth of November the applicant was shot in the city of St. Louis, and died on the 12th. The details of the shooting are not disclosed by the testimony, but it is admitted that he was without fault in the transaction; so that it stands upon an application in all its forms showing a first-class risk, received by the defendant, and, upon the testimony, I must find accepted by it.

If that was all that there was in this case, under well-settled rules it would have to be held that the minds of the parties had come to a concurrence; that a contract was created between them, and the complainant entitled to relief. But the application contains this provision as to the time when the policy shall become operative and in force:

"That under no circumstances shall the certificate hereby applied for be in force until the actual payment to, and the acceptance of, the first annual dues by the association, and actual delivery of the certificate to the applicant, with a receipt for the payment of the first annual dues, signed by the president, secretary, or treasurer of the association, during the life-time of the applicant."

While it may be conceded that a contract was entered into between these parties, it was a contract to become operative upon the happening of a certain condition; and it is competent, of course, for parties to stipulate as to when their contract shall become operative. Suppose, for instance, that in this application it had been proposed by the applicant that the policy should become in force on the twentieth of November. Such a policy, though issued by the company on the 10th, would not become operative until the time which the parties themselves had named; or if in the application had been a proposition that the policy should become operative 10 days after its receipt at the home office in New York, then, although it were received on the 10th, and accepted on the 10th, the policy would not become operative as a contract of insurance until 10 days thereafter. We all know that there have been cases in which, there being no stipulation of this kind in the application, there has been a question as to whether the insurance company had accepted the proposition, and uncertainty in the proof as to whether it had passed the final board of determination so as to constitute an acceptance, and therefore binding on the company. Doubtless, with that fact in view, this stipulation was incorporated into this application, so that there might be no question as to whether this officer or that officer had passed upon the application, and that the contract should not become operative until the certificate of insurance had actually reached the applicant.

Counsel for complainant has very ably and ingeniously striven to avoid the effect of this stipulation. Two principal reasons or suggestions were offered:

*First.* The application was received in New York at 4 o'clock on the ninth of November.    He insists that it was the duty of the company to act immediately, unless there was a pressure of other business, which is not shown, and that, if the company had acted immediately on this application, which confessedly shows a first-class risk, the certificate would have reached the insured before his death. I think it can hardly be maintained that the company was guilty of any serious delay.    The application was received on the afternoon of the 9th, at 4 o'clock.    At that time of day little was to be expected of the medical director, or of the executive committee of the company; and it does appear that it passed into the hands of the medical director, and was acted upon by him on the 10th.    Even if there were delay, can it be said that that delay changed the force of this stipulation?    Suppose the company neglected for five days to act upon it, when the party had proposed that the policy should only be in force at the time of the receipt by him of the certificate, would the delay of the company make the policy in force before that time? I think not.

The other suggestion is this :    This stipulation is in the printed portion of the application.    The beneficiary was applicant's wife, the present complainant, whose name was written in the application, and counsel invokes the aid of the familiar rule that when, in any instrument, there are stipulations of opposing import, the written have control and superiority over those that are printed; and he insists that as Mrs. Kohen, the complainant, was the beneficiary in the policy, that to her the policy should be delivered, and not to the applicant; that she had the entire interest in the policy, and the right to its possession, and therefore that this written over-rides and controls the printed stipulation.

I think counsel is mistaken.    The negotiations were between the applicant and the company.    They were the two contracting parties, and they could make any stipulation as to the custody of the policy which was to be issued.    It would have been perfectly competent for them to stipulate that it should be filed in the office of the register of deeds in this city, or anywhere else.    The beneficiary, until the policy became in force, had no interest in the contract, and the policy was not in force until, by its terms, it was delivered to the applicant. So, while counsel very ingeniously and forcibly presented this point, I am constrained to hold against him.

A decree must be entered dismissing the bill.