## THE STATE v. HARRY GRIFFIN, Appellant.

**Division Two, April 8, 1913.**

1. **BILL OF EXCEPTIONS:** Not Authenticated. If what purports to be a bill of exceptions is not authenticated by the signature of the judge of the court who tried the case, nor by the signature of bystanders, it cannot be considered on appeal, and nothing but the record proper is for consideration.

2. **INFORMATION: Rape: Omission of Letter h from Child.** An information charging that defendant "did then and there in and upon one Mandy Williams, a female cild of the age of eleven years, unlawfully, violently and feloniously make an assault and her the said Mandy Williams, then and there, unlawfully, forcibly and against her will, feloniously did ravish and carnally know," etc., is not fatally defective because the letter *h* is omitted from the word child. When the whole information is read together, it charges defendant with ravishing a female human being. The omission of a letter from a word or the misspelling of a word in an information written by typewriter is not so apt to mislead and hence is not so serious a matter as in the days of illegible penmanship.

3. **VERDICT: Impeachment by Jurors: Belief that Defendant Could be Paroled.** The verdict assessing defendant's punishment at five years for the ravishment of an eleven-year-old girl, cannot be set aside on the affidavit of jurors to the effect that they did not believe the jury would have agreed upon a verdict if they had not believed the defendant could be paroled. The jury do not possess the power to consider pardons or reprieves.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris*, Judge.

AFFIRMED.

*J. W. Tincher* and *N. T. Cave* for appellant.

The court erred in refusing to sustain defendant's motion in arrest of judgment on the theory "that the information upon which the defendant was tried was not sufficient in law." The information charged defendant with having ravished a female cild——. This

allegation is not sufficient in law to sustain an information or indictment. Any material allegation in an information or indictment must be definite and specific. State v. Clinkenbeard, 135 Mo. App. 189; State v. Fairlamb, 121 Mo. 137; State v. Campbell, 210 Mo. 202; State v. Skillman, 209 Mo. 408. The charge in the information of having ravished a female *cild* is not sufficient in law because it does not charge defendant with having ravished a human being, and material allegations in an information or indictment cannot be made out by intendment. The word *cild* is not, to our knowledge, any designation of person or being.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1) The information is good and sufficient, is in the language of the statute and complies with the opinions and former precedents of this court. Sec. 4471, R. S. 1909. It is a rescript of the indictment approved in the cases of State v. Burries, 126 Mo. 565 and State v. Stackhouse, 242 Mo. 444. (2) The bill of exceptions is neither signed by the judge nor by bystanders. State ex rel. v. Taylor, 134 Mo. App. 430. A bill of exceptions must be properly signed and filed before it becomes a part of the record. State v. Libby, 203 Mo. 596; Secs. 2030-2037, R. S. 1909. There being no bill of exceptions, there is nothing before the court but the record proper. Reno v. Fitz Jarrell, 163 Mo. 411; State v. Baty, 166 Mo. 561; State v. Winegard, 168 Mo. 490.

BROWN, P. J.—Defendant was charged with and convicted of the crime of rape committed upon one Mandy Williams, and from a judgment of the circuit court of Callaway county sentencing him to serve a term of five years in the penitentiary he appeals.

249 Mo.—40

I.  The brief of the Attorney-General filed in this case on January 1, 1913, challenges the sufficiency of

**No Bill of Exceptions.**

the bill of exceptions on the ground that it does not purport to be authenticated by the signature of the circuit judge who tried the case, nor by the signatures of three bystanders, as provided by section 2031, Revised Statutes 1909.

Upon examination we find that, so far as matters of exceptions are concerned, this appeal is in the same condition as the appeal in the case of State v. Roy Watts, 248 Mo. 494.

The abstract of the record proper is certified by the clerk of the circuit court in due form and recites that the defendant filed a bill of exceptions, but said record proper contains no copy of the evidence or instructions of the court.

What defendant asks us to treat as a bill of exceptions is a mere bundle of typewritten papers, not authenticated by the certificate of the clerk of the circuit court, and not attached to any paper that is authenticated or verified. If this bundle of papers speaks the truth what was intended as a bill of exceptions was not authenticated by the signature of the trial judge. The concluding paragraph of what defendant insists is a copy of the bill of exceptions reads as follows:

And now, within the time allowed, comes the defendant and presents this his bill of exceptions herein and prays the court to sign, seal, allow, settle, and file the same and make it a part of the record in this cause.

And this is accordingly done on this the —— day of ————, 1912.

Judge of the Callaway County
Circuit Court, State of Missouri.

Upon the authority of the case of State v. Watts, supra; Roberts v. Jones, 148 Mo. 368; Reno v. Fitz Jarrell, 163 Mo. 411; State v. Collins, 196 Mo. 87, and State v. Brown, 164 Mo. App. 726, we must decline to review anything except the record proper in this cause.

II. Omitting formal parts, the information charges that defendant:

"On or about the 19th day of August, 1911, at Callaway county, Missouri, did then and there in and upon one Mandy Williams, a female *cild* of the age of eleven years, unlawfully, violently and feloniously make an assault and her the said Mandy Williams, then and there, unlawfully, forcibly and against her will, feloniously did ravish and carnally know; contrary to the form of statutes in such cases made and provided and against the peace and dignity of the State."

·Indictment.

Defendant insists that the letter *h* being omitted from the word *child,* as used in the foregoing information, said information is thereby rendered meaningless and fatally defective; consequently, his motion in arrest should have been sustained. To support this contention defendant's attorneys cite: State v. Clinkenbeard, 135 Mo. App. 189; State v. Fairlamb, 121 Mo. 137, 154; State v. Campbell, 210 Mo. 202, and State v. Skillman, 209 Mo. 408.

The Campbell and Skillman cases are not authority for defendant's contention, because they ride off on a proposition that one whole word was omitted from the indictment in those cases, while the matter now in judgment pertains only to the misspelling of a word.

As to whether the Skillman and Campbell cases go too far in holding that all words used in the Constitution are necessarily mandatory, we need not decide because that point is not before us in this case.

The rule that indictments must be specific only voices the command of section 22 of article 2 of our State Constitution, which declares that in all criminal cases the accused shall have the right "to demand the nature and cause of the accusation" upon which the State seeks to take away his liberty.

The issue here is: did the above quoted information inform the defendant that he stood accused of ravishing and carnally knowing a female of the *genus homo?*

Upon careful consideration we hold that it did. The information gives not only the Christian name but the surname of the prosecutrix, and the recital of her surname almost indisputably points to the fact that the pleader meant to designate a female human being. The lower animals are frequently given names corresponding to our own Christian names, but we take judicial notice that the lower animals are rarely given a surname. The information also twice referred to the prosecutrix as *"her,"* a pronoun invariably used in referring to a female human being; so that, when the whole indictment is read together, we think it clearly charged the defendant with ravishing a female human being, as prohibited by section 4471, Revised Statutes 1909.

Those cases which require extreme accuracy in the spelling of all words used in indictments are founded upon the former custom of writing all legal documents with a pen (or goose quill), when the chirography of the writer was often so difficult to read that the omission of a single letter from a word rendered such word unintelligible. Since typewriting has been almost universally adopted, the omission of a letter from a word or the misspelling of a word, which frequently occurs through the striking of the wrong key of a typewriter, does not usually obscure the meaning of the document wherein such misspelled word occurs.

Being convinced that in this case the misspelling of the word *"child"* did not mislead or "prejudice the substantial rights of the defendant upon the merits" within the purview of our Criminal Statute of Jeofails (Sec. 5115, R. S. 1909), we rule this assignment against him.

III. After the verdict was returned several of the persons who sat in the case as jurors and returned the verdict made affidavit that they did not believe the

**Verdict.** jury would have agreed upon a verdict if they had not believed the defendant could be paroled. The court properly refused to set aside the verdict on such a showing. The jury possessed no power to consider pardons or reprieves. Their sole province was to determine the guilt or innocence of defendant. If they were convinced beyond a reasonable doubt of his guilt, it was their duty to convict him, and leave the matter of clemency where the Constitution and laws of our State have placed it.

Finding no reversible error in the record proper the judgment of the trial court is affirmed.

*Faris* and *Walker, JJ.,* concur.